**ROBERT G. BERNHOFT, ESQ**
Wisconsin Bar No. 1032777
**THE BERNHOFT LAW FIRM, S.C.**
1402 E. Cesar Chavez Street
Austin, TX 78702
(512) 582-2100 telephone
(512) 373-3159 facsimile
rgbernhoft@bernhoftlaw.com
Application for *Pro Hac Vice* Admission to be filed

**JOEL F. HANSEN, ESQ.**
Nevada Bar No. 1876
**COOPER LEVENSON, P.A.**
1835 Village Center Circle
Las Vegas, Nevada 89134
(702) 366-1125: office
(702) 366-1857: facsimile
jfhansen@cooperlevenson.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| RICHARD ZEITLIN, ADVANCED TELEPHONY CONSULTANTS, MRZ MANAGEMENT, LLC, DONOR RELATIONS, LLC, TPFE, INC., AMERICAN TECHNOLOGY SERVICES, COMPLIANCE CONSULTANTS, CHROME BUILDERS CONSTRUCTION, INC., and UNIFIED DATA SERVICES,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A. and JOHN and JANE DOES 1-100,<br><br>Defendants. | Case No. _____<br><br>**JURY TRIAL DEMANDED** |

### ORIGINAL COMPLAINT

COMES NOW the Plaintiff, Richard Zeitlin, by and through his attorneys, THE BERNHOFT LAW FIRM, S.C. and COOPER LEVENSON, P.A., and for his Complaint against the Defendants BANK OF AMERICA, N. A. AND JOHN AND JANE DOES 1-100, states as follows:

1

## INTRODUCTION

1. This is a civil diversity action seeking compensatory, punitive, declaratory, and other legal and equitable relief, for Defendant Bank of America's improper freezing of Plaintiff's bank accounts in violation of Nevada common and statutory law.

2. Plaintiff Richard Zeitlin has suffered severe hardship and damage as a result of this improper action in the form of lost business opportunities, damage to his professional and personal reputations, and severe emotional distress that has forced him to seek medical treatment.

3. The sole justification for Defendant's egregious conduct is based on a contractual clause buried deep within a 70-page adhesion contract that Defendant contends accords it unlimited and unreviewable discretion without legal process or statutory authority to freeze its depositors' accounts and to deny the depositor any opportunity to respond.

## JURISDICTION AND VENUE

4. This is a civil action seeking compensatory, punitive, declaratory, and other legal and equitable relief, and the Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds the sum of $75,000.

5. This action is properly venued in this federal judicial district under 28 U.S.C. §1391. The Plaintiff resides in this district and the events giving rise to the claims asserted herein occurred within the district.

## THE PARTIES

6. Plaintiff Richard Zeitlin is a resident of the State of Nevada. The remaining plaintiffs are all residents of the State of Nevada and owned by Richard Zeitlin.

7. On information and belief, Defendant Bank of America, N.A., ("Bank of America"), is a Delaware corporation whose principal place of business is in North Carolina and which does business in the state of Nevada. The John and Jane Does 1-100 are all unknown participants in the allegations set out below.

## FACTS APPLICABLE TO ALL COUNTS

8.  Sometime in 1994, the precise date being unknown, Plaintiff Richard Zeitlin opened a personal deposit account with Bank of America. Over the next 24 years, Zeitlin opened several additional accounts, both personal and business. As of June 1, 2018, Zeitlin maintained the following accounts and is currently an authorized signer on each:

| Account Number | Name on Account | Date Opened |
|---|---|---|
| #xxxxxxxx0080 | Advanced Telephony Consultants, LLC | 04/16/16 |
| #xxxxxxxx6939 | TPFE, Inc. | 05/18/15 |
| #xxxxxxxx2331 | Donor Relations, LLC | 05/19/16 |
| #xxxxxxxx6463 | Unified Data Services, LLC | 12/27/17 |
| #xxxxxxxx6641 | Compliance Consultants, LLC | 12/27/17 |
| #xxxxxxxx8925 | Integrated Telecom, Inc. | 07/18/05 |
| #xxxxxxxx4942 | Chrome Builders Construction, Inc. | 01/19/18 |
| #xxxxxxxx2095 | MRZ Management, LLC | 11/04/15 |
| #xxxxxxxx4421 | Richard Zeitlin | 1994 |

9.  According to Bank of America Associate General Counsel Ryan H. Rogers, by letter dated August 14, 2018, each of these deposit accounts is subject to the terms and conditions of Bank of America's "Deposit Agreement and Disclosure" ("Deposit Agreement"). The Deposit Agreement is a standard form document applicable to Bank of America deposit accounts and is amended from time to time. The current version of the Deposit Agreement, which went into effect June 4, 2018 and may be accessed electronically at https://www.bankofamerica.com/deposits/resources/deposit-agreements.go (accessed September 28, 2018), consists of more than 70 pages of extremely small print.

10. At the time Zeitlin opened each of these deposit accounts, there were absolutely no negotiations between Zeitlin and Bank of America with respect to the terms and conditions contained in the Bank of America deposit agreement. The Deposit Agreement was presented to Zeitlin as a "*fait accompli*" or as a "take it or leave it" agreement.

11. At the time Zeitlin opened each of these deposit accounts, no one from Bank of America explained or pointed out to Zeitlin any of the contents of the Deposit Agreement. In particular, no one called Zeitlin's attention to the following language which is taken from the current Deposit Agreement ("Freezing Clause"):

> "If at any time we believe your account may be subject to irregular, unauthorized, fraudulent, or illegal activity, we may, in our discretion, freeze some or all of the funds in the account and in other accounts you maintain with us, without any liability to you, until such time as we complete our investigation of the account and transactions."

12. By its plain terms, the Freezing Clause may be invoked any time a Bank of America official with appropriate decision making authority holds a subjective belief of irregular, unauthorized, fraudulent, or illegal activity. Indeed, nothing in the Clause requires a good faith belief, reasonable belief, or objective belief based on evidence. Even if the Bank of America official has a bad faith or unreasonable belief that one of its depositors' accounts has had irregular or unauthorized activity, he may freeze the account *indefinitely*, effectively converting the funds to the bank's own use.

13. On August 8, 2018, Zeitlin discovered that each of the personal and business accounts listed above had been frozen for reasons that to date have never been explained to him.

14. By letter dated August 9, 2018 and sent on behalf of Zeitlin, Daniel J. Treuden, an attorney with the Bernhoft Law Firm, S. C., contacted Andrew Frey, an investigator with Bank of America to whom Zeitlin had earlier been referred and demanded that the bank release the funds that "were illegally frozen without explanation or legal process." Treuden also requested information concerning the investigation into Zeitlin's business and personal accounts over which he has signature authority. Among other things, Treuden requested information regarding the nature, scope, genesis, and duration of the investigation and the precise reason the funds were being frozen. Treuden further requested that Frye identify the legal authority that allowed Bank of America to undertake such action and to provide a copy of legal process, if any, that could allow the bank to freeze Zeitlin's funds.

15. By letter dated August 10, 2018, Frye responded with what appears to be a standard form letter. The sole justification for the freeze was based on the Freeze Clause of the Deposit Agreement whose language was quoted above. Further, Frye refused to answer any of Treuden's

queries, stating cryptically that details of "investigations are kept internal and not divulged either during or after the process."

16. Treuden responded that same day with a letter to David G. Leitsch, the bank's Global General Counsel with whom Treuden had conferred earlier by telephone. Treuden's letter warned Leitsch that holding another's assets without legal process or explanation was an illegal act that would not be tolerated. Bank of America's blanket and inexplicable refusal to discuss the merits of the investigation was a problem that needed to be rectified immediately.

17. Prior to filing the instant action, the parties exchanged three more letters. On August 14, 2018, Ryan H. Rogers, the bank's Associate General Counsel, advised attorneys Treuden and Robert G. Bernhoft to direct any future correspondence to him. Rogers recited the language of the Freeze Clause which to date remains the sole justification any Bank of America representative has offered for the freeze. Acknowledging that the Deposit Agreement was an adhesion contract, Rogers stated unequivocally that when the deposit accounts in question were opened, Zeitlin agreed to the terms and conditions of the Deposit Agreement, a copy of which could be accessed electronically.

18. By letter dated August 15, 2018, Treuden responded to Rogers and pointed to the gravity of the situation if Zeitlin's funds were not immediately unfrozen. Unless Zeitlin had access to these funds, he would be laying off dozens of employees that week and would face such a severe liquidity problem that he would have trouble keeping his businesses afloat. Treuden requested that Bank of America provide periodic updates and a timeline for the investigation's conclusion and the return of Zeitlin's funds. Treuden also warned that if he could not obtain the "reasonable and necessary information" they had requested, then Zeitlin would be compelled to seek legal relief in an appropriate legal forum.

19. On September 19, 2018, Zeitlin received one last letter, this one from E. C. Rainey, a resolutions specialist with the regulatory complaints division of Bank of America. The letter stated only that the bank needed additional time to continue its investigation and that it could not provide "a resolution timeframe at this time."

20. As a direct and proximate result of Bank of America's improper freezing of Zeitlin's personal and business accounts, Zeitlin's was unable to implement a planned expansion of more than 200 agents and has lost at least $300,000 per week in sales and renewals that will never be recovered. Over the last seven weeks, Zeitlin has lost at least $2 million in sales and acquisitions. In addition, as a direct and proximate result of Bank of America's improper actions, Zeitlin has been forced to layoff employees resulting in approximately $150,000 in damages due to lost daily production and has been forced to take on new credit resulting in an immediate drop in his personal credit score.

21. In addition to freezing Zeitlin's personal and business accounts, Bank of America also froze the accounts of two of Zeitlin's largest clients, two federal super pacs that owe Zeitlin approximately $500,000, a portion of which remains due and owing as of the date of this filing.

22. As a direct and proximate result of Bank of America's improper freezing of Zeitlin's personal and business accounts, Zeitlin has suffered severe emotional distress, sleeplessness, and anxiety for which he has forced to seek medical treatment.

23. As of October 1, 2018, only two of Zeitlin's accounts had been unfrozen, Advanced Telephony Consultants, LLC, and TPFE, Inc.

24. On October 1, 2018, Bank of America unfroze all but one of the remaining accounts. As of the date of this filing, the account pertaining to Chrome Builders Construction, Inc. remains frozen and Bank of America has denied Zeitlin access to the funds contained therein which total approximately $25,000.

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT**

25. Plaintiff Zeitlin incorporates by this reference all facts and allegations set forth in paragraphs 1 through 24 of this Complaint as if fully set forth herein.

26. Zeitlin entered into account agreements with respect to each of the deposit accounts listed in paragraph 8 for the express purpose of receiving checks and electronic deposits to his account and to use these funds to send checks and electronic deposits to others and to make purchases, pay expenses, and meet payroll.

27. The Deposit Agreement expressly provides that a depositor has a general right to withdraw funds as soon as a check or electronic deposit clears:

> "Our general policy is to make funds from your cash or check deposit account available to you no later than the first business day after we receive your deposit. Our policy is to make funds from electronic direct deposits made through the automated clearing house (ACH) and incoming wire transfers available to you the day after the deposit. **Once they are available, you can withdraw the funds and we will use the funds to pay checks that you have written.**" (Emphasis supplied).

28. Zeitlin has performed all of the conditions, covenants, and promises required on his part in accordance with the Deposit Agreement except for those obligations that Zeitlin was prevented or excused from performing.

29. The Deposit Agreement is an adhesion contract under Nevada law. In a section titled "Changes to This Agreement," the Deposit Agreement states that: "We may change this Agreement at any time. … If you continue to use your account or keep it open, you are deemed to accept and agree to the change, and are bound by the change. If you do not agree with a change, you may close your account as provided in this Agreement."

30. Bank of America breached its contract with Zeitlin by freezing his accounts and denying him access to funds contained in his accounts to send checks and electronic transfers, and by preventing preventing him from withdrawing funds from his accounts.

31. The sole justification Bank of America has offered for denying Zeitlin access to funds in his accounts is that the Freezing Clause gives Bank of America an unqualified and unreviewable right to do so without explanation, justification, or excuse.

32. By its plain terms, the Freezing Clause is unconscionable and void as against public policy and is therefore unenforceable.

33. Additionally, or in the alternative, the Freezing Clause as interpreted and implemented by Bank of America, is unconscionable and void as against pubic policy and is therefore unenforceable.

34. As a direct and proximate result of Bank of America's breach of contract, Zeitlin has suffered damages, including but not limited to denial of access to funds in his accounts, lost business

7

opportunities, damage to his credit rating and reputation, attorneys' fees, and emotional distress for which he has been forced to seek medical treatment.

## SECOND CAUSE OF ACTION
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

35. Plaintiff Zeitlin incorporates by this reference all facts and allegations set forth in paragraphs 1 through 34 of this Complaint as if fully set forth herein.

36. By improperly freezing Zeitlin's accounts indefinitely and denying him any opportunity to refute any allegations of irregularity or even informing him of the substance of the allegations themselves, Bank of America has performed the contract in a manner that is unfaithful to the purpose of the contract itself and of the justified expectations of performing party Zeitlin. In so doing, Bank of America has violated the implied duty of good faith and fair dealing that exists in all contracts. Further, each of these acts was performed with oppression and malice.

37. As a direct and proximate result of Bank of America's breach of the implied covenant of good faith and fair dealing that exists in all contracts, Zeitlin has suffered damages, including but not limited to denial of access to funds in his accounts, lost business opportunities, damage to his credit rating and reputation, attorneys' fees, and emotional distress for which he has been forced to seek medical treatment.

## THIRD CAUSE OF ACTION
## VIOLATION OF NEVADA DECEPTIVE TRADE PRACTICES ACT
(Nev. Rev. Stat. Ann. § 598.0903 et. seq.)

38. Plaintiff Zeitlin incorporates by this reference all facts and allegations set forth in paragraphs 1 through 34 of this Complaint as if fully set forth herein.

39. A person engages in a "deceptive trade practice" when in the course of his or her business or occupation he or she knowingly fails to disclose a material fact in connection with the sale or lease of goods or services. Nev. Rev. Stat. Ann. § 598.0923. For purposes of this provision, "services" includes services performed in connection with banking accounts.

40. On information and belief, Bank of America has a policy or practice of freezing certain accounts indefinitely based on nothing more than a subjective belief of irregular activity. As part of said policy or practice, Bank of America refuses to allow the affected depositors any

opportunity to answer the allegations of irregular activity, correct any misconceptions, participate in investigations, or even to be informed if the substance of the allegations themselves.

41. That Bank of America has such a policy or practice is a material fact that Bank of America fails to disclose to its depositors in connection with the sale of banking service in violation of Nev. Rev. Stat. Ann. § 598.0923.

42. As a direct and proximate result of Bank of America's deceptive trade practices, Zeitlin has suffered damages, including but not limited to denial of access to funds in his accounts, lost business opportunities, damage to his credit rating and reputation, attorneys' fees, and emotional distress for which he has been forced to seek medical treatment.

43. Further, the conduct of Bank of America as described in paragraphs 39 through 41 herein was oppressive and malicious and therefore warrants the imposition of exemplary and punitive damages in an amount to be established by proof at trial.

## FOURTH CAUSE OF ACTION
## CONVERSION

44. Plaintiff Zeitlin incorporates by this reference all facts and allegations set forth in paragraphs 1 through 34 of this Complaint as if fully set forth herein.

45. By improperly freezing Zeitlin's accounts, Bank of America wrongfully exerted dominion over personal property in denial of, or inconsistent with, title or rights therein and in derogation, exclusion, and defiance of such rights. In so doing, Bank of America improperly converted Zeitlin's property to its own use.

46. As a direct and proximate result of Bank of America's conversion, Zeitlin has suffered damages, including but not limited to denial of access to funds in his accounts, lost business opportunities, damage to his credit rating and reputation, attorneys' fees, and emotional distress for which he has been forced to seek medical treatment.

47. Further, the conduct of Bank of America as described in paragraphs 1 through and 34 and paragraph 45 herein was oppressive and malicious and therefore warrants the imposition of exemplary and punitive damages in an amount to be established by proof at trial.

## FIFTH CAUSE OF ACTION
## DECLARATORY AND INJUNCTIVE RELIEF

48. Plaintiff Zeitlin incorporates by this reference all facts and allegations set forth in paragraphs 1 through 34 of this Complaint as if fully set forth herein.

49. An actual controversy has arisen and now exists between Zeitlin and Bank of America regarding the respective rights and concerning the validity and enforceability of the Freezing Clause.

50. As a direct and proximate result of Bank of America's improper actions, Zeitlin has suffered damages, including but not limited to denial of access to funds in his accounts, lost business opportunities, damage to his credit rating and reputation, attorneys' fees, and emotional distress for which he has been forced to seek medical treatment.

51. Zeitlin requests that the Court find and declare that the Freezing Clause is both unconscionable and void as against public policy and is therefore unenforceable.

52. In addition, Zeitlin requests that this Court issue an immediate order directing Bank of America to unfreeze any of Zeitlin's accounts that remain frozen and allowing Zeitlin access to the funds contained therein, and enjoining Bank of America from freezing Zeitlin's accounts in the future in the absence of a court commanding it to do so and expressly identifying the account(s) to be frozen.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays this Court enter judgment in favor of Plaintiff and against the Defendant Bank of America, and award:

(A) compensatory damages in an amount to be determined for denial of access to funds, lost business opportunities, damage to personal and professional reputations, damage to credit rating, incidental and consequential damages, and emotional distress;

(B) punitive and exemplary damages in an amount to established by proof at trial;

(C) attorneys' fees and costs of this litigation;

(D) a declaratory judgment that the Freezing Clause is unconscionable and void as against public policy and is therefore unenforceable;

(E) an injunction directing Bank of America to unfreeze Zeitlin's accounts immediately and enjoining Bank of America from freezing Zeitlin's accounts in the future in the absence of a court order; and

(F) any other relief this Court deems just and equitable under the circumstances as appropriate.

DATED this 5th day of October, 2018.

Respectfully submitted by:
COOPER LEVENSON P.A.

BY: /s/Joel F. Hansen
JOEL F. HANSEN, ESQ.
Nevada Bar No. 1876
1835 Village Center Circle
Las Vegas, NV 89134
Attorney for Plaintiffs

11