Amy F. Sorenson, Esq.
Nevada Bar No. 12495
Robin E. Perkins, Esq.
Nevada Bar No. 9891
Kiah D. Beverly-Graham, Esq.
Nevada Bar No. 11916
SNELL & WILMER L.L.P.
3883 Howard Hughes Pkwy, #1100
Las Vegas, Nevada 89169
Telephone: 702-784-5200
Facsimile: 702-784-5252
Email: asorenson@swlaw.com
       rperkins@swlaw.com
       kbeverly@swlaw.com

*Attorneys for Defendant Bank of America, N.A.*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| RICHARD ZEITLIN, ADVANCED TELEPHONY CONSULTANTS, MRZ MANAGEMENT, LLC, DONOR RELATIONS, LLC, TPFE, INC., AMERICAN TECHNOLOGY SERVICES, COMPLIANCE CONSULTANTS, CHROME BUILDERS CONSTRUCTION, INC., and UNIFIED DATA SERVICES,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A., and JOHN and JANE DOES 1-100,<br><br>Defendants. | Case No.: 2:18-cv-01919-RFB-CWH<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |

Defendant Bank of America, N.A., by and through its attorneys, Snell & Wilmer L.L.P., hereby submits this Reply to Plaintiffs' Response to Defendant's Motion to Dismiss Plaintiff's Complaint (ECF No. 17) (the "Response"). This Reply ("Reply") is based upon the papers and pleadings on file herein, the following Memorandum of Points and Authorities, and any oral argument the Court may entertain.

4830-9698-0865

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. SUMMARY

Plaintiffs' Response is a classic example of relying upon unsubstantiated hyperbolic and vitriolic allegations and conclusions because they have no legal grounds or basis for their complaints. Plaintiffs' Response is bereft of legal analysis or legal support. This lack of law and fact for their bald assertions is glaring throughout the Response, as Plaintiffs simply repeat, again and again, hyperbole and grand conspiracy assertions, in an effort to disguise the fact that Plaintiffs have not and cannot allege legally cognizable claims.

Contrary to Plaintiffs' assertions, and as detailed in BANA's Motion, the Freeze Clause is a necessary response to the risk created by potential customer activity, particularly given a number of federal laws, regulations and requirements with which BANA (and many financial institutions) must comply. Further, the Freeze Clause is crucial to mitigate risk and exposure of loss to customers and non-customers alike. Plaintiffs ask this Court to find an ordinary banking clause, included in millions of similar deposit agreements, existing to protect the public and financial institutions from illicit conduct and risk of substantial loss, as unconscionable and unenforceable, despite the multitude of other courts rejecting this identical request. Invalidating such a ubiquitous clause would have a substantial impact on the banking and financial regulatory system as a whole.

Plaintiffs repeatedly contend that they have not had the opportunity to be heard, to participate in the investigation, to confront accusers, and mount a defense. But this is not a criminal matter, and Plaintiffs have not alleged (nor could they) any constitutional violations. Plaintiffs are not entitled to legal process, protections and safeguards associated with criminal misconduct or constitutional protections. BANA is not a government actor. This is a private contract between a private bank and borrower. These complaints are irrelevant.

Plaintiffs repeatedly contend that the various contract terms at issue were hidden, in fine print, unintelligible, and that BANA failed to expressly identify each and every provision to Plaintiffs. But Plaintiffs offer no law which states that those factors (even if true, and they are not) would constitute an unconscionable and unenforceable contract.

Plaintiffs repeatedly contend that BANA has unfettered discretion in freezing an account. Yet Plaintiffs' assertion directly ignores the express language of the Freeze Clause which substantially limits that discretion stating that BANA may only exercise the right based upon a belief that an account is "subject to irregular, unauthorized, fraudulent or illegal activity."

In attempting to address the specific claims, Plaintiffs continue to focus on meritless hyperbole and vitriol, and legal conclusions unsubstantiated by any relevant law. The Response does nothing to change the conclusion that these claims meritless as a matter of law and should be dismissed.

<u>First</u>, Plaintiffs' breach of contract claim that the Freeze Clause is unconscionable fails as a matter of law because multiple courts have considered substantially identical provisions and rejected substantially identical claims. Plaintiffs offer nothing to change that result here. <u>Second</u>, Plaintiffs' breach of the covenant of good faith and fair dealing claim fails because the Deposit Agreement on its face expressly bars the use of any account for illegal purposes and permits BANA to freeze an account if it suspects such misuse. The purpose and spirit was not violated. <u>Third</u>, Plaintiffs' fraud claim fails because they have not and cannot plead a misrepresentation or omission because the conduct they complain of is expressly set forth in the Deposit Agreement.

<u>Fourth</u>, Plaintiffs' conversion claim fails because a bank account is not subject to conversion as a matter of law and the economic loss doctrine applies because no duty independent of the Deposit Agreement is alleged. <u>Fifth</u>, Plaintiffs' claim for consequential and punitive damages fails because the limitation of liability clause prohibits these damages and such clauses are upheld as a matter of law. Plaintiffs' attempt to amend the Complaint through motion practice to add new tort allegations that would somehow warrant punitive damages likewise fails because amendment through motion practice is prohibited.

///
///
///
///

1  II.  **ARGUMENT**

2  **A. Plaintiffs' Unconscionability Claim Fails as a Matter of Law.**

Plaintiffs' complaint that the Freeze Clause is unconscionable and unenforceable has been repeatedly rejected and fails as a matter of law.[1] Plaintiffs offer nothing to change that result.

1. <u>All Courts Deciding This Same Issue Have Rejected Plaintiffs' Contention.</u>

Plaintiffs' contention that the cases cited by BANA are irrelevant and should be disregarded is inaccurate. These cases address almost identical freeze clauses and the exact same claims. They are directly on point and highly persuasive. Other than identifying immaterial distinctions or varying procedural postures, Plaintiffs fail to articulate how those differences were relevant to the holdings that similar freeze clauses are not unconscionable. Plaintiffs' superficial attempt to manufacture distinctions is a misrepresentation to this Court, and it fails.

In *RoHillCo Business Servs. LLC v. JPMorgan Chase Bank, N.A.*, the court dismissed a very similar claim for breach of a deposit agreement premised on the bank having frozen plaintiffs' accounts. No. 3:15-cv-02270-SB, 2016 WL 4051296, at *2, 6 (D. Or. June 24, 2016). Just like the Plaintiffs here, those in *RoHillCo* argued that a freeze clause in a deposit agreement was adhesive, unconscionable, and unenforceable. *Id*. The Court expressly recognized and rejected those arguments. Plaintiffs contend that this case was dismissed because it was "improperly pled for reasons that have no relevance here." Resp. 16:9-10. But other than so alleging, Plaintiffs offer nothing to explain that meritless contention. There is nothing because it is simply wrong. Instead, *RoHillCo* is directly applicable to the facts here as the Court considered, and rejected, the same arguments in support of the same breach of contract claim advanced by Plaintiffs here.

*Blocker v. Wells Fargo Bank, N.A.* is also relevant and highly persuasive because it extensively analyzed the question of whether a freeze clause was unconscionable as a matter of law, concluding it was not. No. CV 08-1196-PK, 2010 WL 6403721, at *6-7 (D. Or. Nov. 23,

---

[1] Plaintiffs' contention that BANA has "waived" any challenge to its supposed public policy argument is wrong. The Complaint does not contain distinct unconscionability and public policy allegations. It pleads unconscionability and public policy as intertwined. Compl. ¶¶ 32, 33. BANA's arguments and authorities on unconscionability are equally applicable to the public policy allegations because they are pled as one-in-the-same. BANA has waived nothing.

- 4 -

2010).  Plaintiffs' contention that *Blocker* is irrelevant because it was decided at the summary judgment stage, on the basis of different facts, fails.  While *Blocker* was decided at the summary judgment stage, in favor of the bank, the Court's holding that this similar freeze clause was not unconscionable and was enforceable was decided on only a few facts, indeed the same alleged here: (i) there was unequal bargaining power between the parties; (ii) plaintiff had no opportunity to suggest revisions before signing the deposit agreement; and (iii) the provision at issue gave the bank the right to freeze the account if it suspected irregular, unauthorized, or unlawful activity. *Id*. at *6-7.  The Court did not directly consider the evidence of tax fraud. *See id.* at *7.  Accordingly, Plaintiffs' assertion is wrong. So too is Plaintiffs' contention that other cases are irrelevant merely because they were decided on summary judgment. *See G*r*iffin v. Bank of America Corp.*, No. 1:09-cv-1144-WSD, 2010 WL 11598055, at *9, *9 n. 13 (N. D. Ga. Sept. 17, 2010) (granting summary judgment in favor of BANA on claim for breach of the same Deposit Agreement based on the same material facts alleged here, *i.e.* that the agreement permitted BANA to freeze the account and the freeze was based on one of the reasons permitted by the contract, noting only as a secondary, independent basis that there were competing claims to the funds ); *Johnson v. Wells Fargo Bank, N.A.*, No. 2:14-cv-1145-MHT, 2016 WL 2849450 (M. D. Al. Apr. 14, 2016) (granting summary judgment in bank's favor based on undisputed facts alleged and undisputed, here: *i.e.*, that the plaintiff entered into the account agreement and the language of that agreement permitted the bank to freeze her account if it suspected unauthorized or suspicious activity).

Finally, Plaintiffs contend that *Norcross Entertainment, LLC v. JPMorgan Chase Bank, N.A.* should be disregarded because it involved a preliminary injunction and a third party had made an adverse claim to the funds at issue. Resp. 16:11-13; Case No. 1:17-cv-01778-TWT, 2017 WL 6994591 (N. D. Ga. June 1, 2017). Yet again, regardless of the procedural posture and other specific facts, Plaintiffs ignore and misrepresent the actual legal basis for the Court's ruling, which was that the plaintiff was unlikely to succeed on its breach of contract claim because "the parties' deposit account agreement governs their relationship and authorized [the bank] to freeze the account . . ." *Norcross*, 2017 WL 6994591 at *2.

- 5 -

4830-9698-0865

1  Other than attempting (and failing) to distinguish these cases by highlighting immaterial differences, Plaintiffs offer no contrary case law to support their unconscionability contention. There is none, and this claim fails.

### 2. Plaintiffs Fail to Demonstrate Procedural Unconscionability.

Plaintiffs' contention that the Freeze Clause is adhesive fails because Plaintiffs do not and cannot plead an absence of meaningful choice. Plaintiffs ignore a key element in determining adhesion. When considering Plaintiffs' own cited case in full, Plaintiffs' representation is revealed to be inaccurate. "An adhesion contract has been defined as a standardized contract form offered to consumers of goods and services essentially on a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain, **and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract.**" *Obstetrics and Gynecologists v. Pepper* 101 Nev. 105, 106, 693 1259, 1260 (1985) (emphasis added).

To be adhesive the contract *also* must be offered "under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract." *Id*. at 106. Plaintiffs acknowledge this requirement stating that "Unconscionability refers to 'an *absence of meaningful choice* on the part of one of the parties *together* with contract terms which are unreasonably favorable to the other party.'" Resp. 11:5-6 (emphasis added), citing to E. Allan Farnsworth, Contracts § 1.9, at 34-35 (3d ed. 1999).

Plaintiffs do not and cannot allege they could not obtain these routine banking services "except by acquiescing to the" Deposit Agreement. Plaintiffs do not and cannot allege that they had no choice but to open an account subject to the Deposit Agreement.[2] Plaintiffs do not and cannot allege that BANA was the sole bank available to them for these routine banking services. There is no "absence of meaningful choice" when Plaintiffs could have elected to bank with any number of comparable institutions. Instead, over a period of twenty-four years and opening at

---

[2] Plaintiffs' reliance on *Perdue v. Crocker National Bank*, 38 Cal.3d 913, 924 (1985), is misplaced because that case addressed a signature card that was not clearly a contract, was printed in six-point type, and contained vague provisions allowing the bank to unilaterally impose unfair prices for bad checks. *Id.* at 920-922.

- 6 -

least 9 accounts, Plaintiff Zeitlin voluntarily elected to bank with BANA – exercising the ability to make a voluntary and meaningful choice.

Plaintiffs also appear to contend that that the Freeze Clause is procedurally unconscionable because it was "buried deep within the fine print of a 70-page adhesion contract." Resp. 2:10, 3:6-7, 8:20-22, 10:17-1. Yet Plaintiffs offer no law to support the contention that small print, or presumably a longer contract, constitutes an adhesion contract. And there is none. It appears Plaintiffs' real complaint is that they did not read the Deposit Agreement. That is no basis for relief. "A party to a written contract is bound by its terms, whether or not he or she reads it, and is conclusively presumed to know its contents and to assent to them." *Campanelli v. Conservas Altamira, S.A.*, 86 Nev. 838, 841, 477 P.2d 870, 872 (1970).

Finally, even if Plaintiffs could demonstrate the Deposit Agreement was adhesive, "the adhesive nature of a contract, without more, would give rise to a low degree of procedural unconscionability at most." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261-62 (9th Cir. 2017). And with a low degree of procedural unconscionability, Plaintiffs must establish a substantially higher degree of substantive unconscionability. "The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Foundation Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000) (cited approvingly by the Supreme Court of Nevada in *D.R. Horton, Inc. v. Green*, 96 P.3d 1159, 1162 n. 12, 120 Nev. 549 (2004)).

3. <u>Plaintiffs Fail to Demonstrate Substantive Unconscionability.</u>

Plaintiffs rely almost entirely on inapplicable cases addressing criminal procedure matters and various statutory and constitutional rights to attempt to establish substantive unconscionability. Plaintiffs' reliance upon cases addressing limitations of statutory rights is irrelevant as Plaintiffs have no statutory right to unfettered access to a bank account, and no such right is alleged. *See Gonksi v. Second Judicial District,* 126 Nev. 551, 560-64, 245 P.3d 1164 (2010) (arbitration provision in a construction contract was unconscionable because, among other reasons, it purported to narrow a claimant's statutory rights under NRS Chapter 40, governing construction defect claims); *Davis v. O'Melveny & Myers,* 484 F.3d 1066, 1075-1081 (2007)

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702-784-5200

4830-9698-0865

(arbitration provision was unconscionable because it operated to shorten the statute of limitations for statutory employment related claims and contained an overly broad confidentiality provision that inhibited discovery.)[3]

Plaintiffs' complaints regarding a constitutional right to be heard and defend, and reliance upon cases addressing criminal due process and constitutional violations are likewise irrelevant here. This is not a criminal matter, and Plaintiffs have not alleged (nor could they) any constitutional violations. Plaintiffs are not entitled to legal process, protections and safeguards associated with criminal misconduct or other constitutional protections. BANA is not a government actor. This is a private contract between a private bank and borrower.

Accordingly, Plaintiffs' repeated reliance on *Luis v. U.S.* is irrelevant because it held that the Sixth Amendment right to counsel prevented the *government* from freezing a *criminal defendant's* assets to the extent those assets were not traceable to a criminal offense. 136 S.Ct. 1083, 1088, 1096 (2016). The other cases Plaintiffs rely upon are similarly inapplicable. *See City of Chi. v. Morales*, 527 U.S. 41, 45-46 (regarding Fourteenth Amendment right to criminal due process); *Schall v. Martin*, 467 U.S. 253, 257-58 (1984) (same); *Rochin v. California*, 342 U.S. 165, 172 (1952) (same); *Integrity Ins. Co. v. Martin*, 105 Nev. 16, 19, 769 P.2d 69, 70 (1989) (holding it was an abuse of discretion to award attorneys' fees without a stated basis).

Plaintiffs baldly assert that the constitutional concerns presented in criminal procedure cases are "plainly implicated where private parties are concerned." Resp. 14:8. But Plaintiffs offer no authority to support this extraordinary conclusion. There is none: while "individuals do, indeed, have a right to be free from **state violations** of the constitutional guarantees … [i]ndividuals, however, have no right to be free from the infliction of such harm **by private actors.**" *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996) (emphasis added).

The only case Plaintiffs offer, which actually considers a version of the Deposit Agreement, ultimately rejects their theory. "Regardless of whether such agreements are adhesion

---

[3] Additional authorities are likewise irrelevant. *Tomiyasu v. Golden*, 81 Nev. 140, 141, 152 400 P.2d 415 (1965) (applying law regarding setting aside foreclosure sales, which is distinct from the principles related to a contractual unconscionability analysis); *Bender v. Bender* (discussing an unconscionability standard applied by Connecticut, not Nevada courts, considering whether "any reasonably sane person" would agree to a provision).

- 8 -

1  contracts, they are nonetheless, generally enforceable and not unconscionable." *FCT Electronics,*
2  *LP v. Bank of America, N.A.*, No. CV106002699, 2011 WL 4908850, at *6 (Conn. Sup. Ct. Sep.
3  22, 2011).

4  Plaintiffs' further complaint that the provision is unfair and thus unconscionable because it
5  allegedly allows BANA unfettered discretion to freeze an account is simply wrong. The express
6  language of the Freeze Clause substantially limits discretion by allowing a freeze only when there
7  is a belief that an account is "subject to irregular, unauthorized, fraudulent or illegal activity."

8  Finally, Plaintiffs contend the Freeze Clause is unconscionable because no rational human
9  being would agree to it. Resp. 15:4-9. Contrary to Plaintiffs' hyperbolic and bald conclusion, it
10 is much more reasonable, rational and likely to conclude that most people would (and do) agree to
11 these terms because most people have no intention of participating in irregular, unauthorized,
12 fraudulent or illegal activity; and most people use their bank accounts to deposit salaries and
13 wages, pay bills, set aside money for education, vacation or other savings goals. Mr. Zeitlin and
14 his associated business enterprises are not most people.

15 Multiple courts have considered identical unconscionability contentions regarding very
16 similar freeze clauses and rejected them each and every time. This Court should do the same here.

17  **B. Plaintiffs Fail to Establish a Claim for Breach of the Implied Covenant
18      of Good Faith and Fair Dealing.**

19 Plaintiffs fail to allege literal compliance or performance with the contract, indeed, their
20 first claim is breach of contract. Accordingly, this claim fails as a matter of law. *Hilton Hotels*
21 *Corp. v. Butch Lewis Prods., Inc.*, 107 Nev. 226, 232, 808 P.2d 919, 922-23 (Nev. 1991).

22 Even if they had pled literal compliance (instead of the exact opposite), Plaintiffs must
23 also plead that the Freeze Clause contradicts the purpose of, or their justified expectations
24 regarding, the Deposit Agreement. *Walker v. State Farm Mutual Auto. Ins. Co.*, 259 F.Supp.3d
25 1139, 1149-50 (D. Nev. 2017) (citing *Perry v. Jordan*, 111 Nev. 943, 900 P.2d 335, 338 (1995)).
26 Contrary to Plaintiffs' desire, the purpose of the Deposit Agreement is not unfettered access to
27 accounts to promulgate illicit activity. The plain terms expressly limit Plaintiffs' banking
28 relationship with BANA to transactions involving legitimate activity. "Compliance", Deposit

- 9 -

Agreement at 48, Ex. A.  The plain terms allow BANA to protect itself by freezing an account if it suspects otherwise.  Freeze Clause, Deposit Agreement at 50-51, Ex. A.  That is the intended and expressly articulated purpose of the accounts.  Plaintiffs have alleged exactly what is expressly addressed and provided for in the Deposit Agreement.  Plaintiffs have identified no conduct that is contrary to the expressly stated purpose.  Accordingly, this claim fails as a matter of law.

### C.  Plaintiffs Fail to Plead a Deceptive Trade Practices Act Claim.

This fraud claims fails as a matter of law because Plaintiffs fail to articulate any misrepresentation or failure to disclose.  Instead, the complained of conduct is expressly set forth in the Deposit Agreement.  There is no fraud, as a matter of law, without a misrepresentation or omission.  *Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 447, 956 P.2d 1382, 1386 (1998).  The ability to freeze an account is set forth in the "Freezing Your Account" section of the Deposit Agreement. Accordingly, there is no misrepresentation or omission as to the existence of the Freeze Clause.  The Freeze Clause does not identify a time frame, stating accounts may be frozen "until such time as we are able to complete our investigation …"  Deposit Agreement at 50-51, Ex. A.  Accordingly, there is no misrepresentation or omission as to length of the freeze.  Finally, the Freeze Clause is limited to suspected "irregular, unauthorized, fraudulent or illegal activity" which is determined "in our discretion."  Deposit Agreement at 50-51, Ex. A.  Accordingly, the subjective determination of irregular activity is also clearly stated, and not misrepresented or omitted.  Everything Plaintiffs offer to ground their fraud claim is explicitly set forth in the Deposit Agreement.

Moreover, Plaintiffs' undefined and unpled allegations made on "information and belief" are not sufficient to state a claim for fraud unless Plaintiffs also plead a statement detailing the basis for the alleged belief.  *Phase 3 Technology & Construction, Inc. v. Cole*, No. 3:15-cv-00107-LRH-VPC, 2015 WL 3938579, at *2 (D. Nev. June 25, 2015) (Allegations of fraud based on information and belief will only satisfy Rule 9(b) if the complaint pleads a statement of facts which details the basis for the alleged belief).  Plaintiffs have failed to do so.  Amendment is

futile as the Freeze Clause expressly articulates BANA's right and basis to freeze. Accordingly, this claim fails as a matter of law.

### D.  Plaintiffs Offer Nothing to Resuscitate Their Conversion Claim.

Plaintiffs offer no law to support their conclusory allegation that a bank account can be the subject of a conversion claim.  Plaintiffs contention that *Reliance Ins. Co. v. U.S. Bank of Washington, N.A.* is irrelevant because it interprets Washington, not Nevada law, is misplaced. *Reliance* holds that a bank account is not generally subject to a conversion claim, and on that point it was not relying upon a state specific law, and is binding here as Ninth Circuit precedent. 143 F.3d 502, 506 (9th Cir. 1998).[4]  Plaintiffs' reliance on *Evans v. Dean Witter* is misplaced because that case contains no holdings regarding conversion of a bank account. 116 Nev. 598, 604, 5 P.3d 1043 (2000) (converted asset was stolen stock deposited into a brokerage account).

Plaintiffs' assertions regarding the economic loss doctrine also fail.  The doctrine precludes the intentional tort of conversion when it is "rooted in defendants' failure to make payment pursuant to [a] contract between the parties. . ." *Kenny v. Trade Show Fabrications West, Inc.*, 2:15-cv-410-JCM-VCF, 2016 WL 697110, at *5 (D. Nev. Feb. 18, 2016) (holding conversion claim barred as contravening the purpose of the economic loss doctrine). Plaintiffs' conversion claim is just the type described in *Kenny*, alleging BANA failed to allow access to funds in breach of the Deposit Agreement.  Compl. ¶¶ 30, 45.

The doctrine applies because the Complaint alleges no duty arising independent of the purported obligation to make funds available pursuant to the Deposit Agreement.  Thus, Plaintiffs reliance on *Davis v. Beling* is misplaced because at issue there was breach of a "duty that is imposed independently of the obligations arising from contract." 128 Nev. 301, 320, 278 P.3d 501 (2012).  Bank accounts cannot be converted and this claim further fails as a matter of law

---

[4] Relatedly, this Court has held that such a creditor/debtor relationship does not ground a conversion claim, finding that "a cause of action for conversion does not lie against a debtor for refusing to repay his creditor." *WMCV Phase 3, LLC v. Shushok & McCoy, Inc.*, 750 F.Supp.2d 1180, 1195 (D. Nev. 2010) (Navarro, J.).  This is applicable because funds in bank accounts "are not specific money, but only an acknowledgment by the bank of a debt to its depositor." *Reliance Ins. Co. v. U.S. Bank of Washington, N.A.*, 143 F.3d 502, 506 (9th Cir. 1998).

because it arises from the exact same contractual duty alleged to have been violated by the purported breach of contract.[5]

### E.  Plaintiffs Fail to Demonstrate a Basis for Consequential or Punitive Damages.

Limitation of liability clauses are routinely upheld, as a matter of law. *Contreras v. Am. Family Mut. Ins. Co.*, 135 F. Supp. 3d 1208, 1229 (D. Nev. 2015) (upholding limitation on liability clause because "under Nevada Contract law, exculpatory clauses are generally valid"); *Verifone, Inc. v. A Cab, LLC*, No. 2:15-cv-00157-GMN-GWF, 2015 WL 6443126, at *3 (D. Nev. Oct. 23, 2015) (same for clause precluding consequential and punitive damages).

Plaintiffs' contention that the clause cannot be included in the parties' agreement unless the parties knowingly consented to the term fails as a matter of law. "A party to a written contract is bound by its terms, whether or not he or she reads it, and is conclusively presumed to know its contents and to assent to them." *Campanelli*, 86 Nev. at 841.

Plaintiffs' superficial contention that the provision is unconscionable is unsupported by any law and fails. Plaintiffs also appear to complain that the provision is inconspicuous, not initialed, and not in all caps. Again, Plaintiffs offer no law to support this contention.

Finally, Plaintiffs assert, for the first time, that the breach of the covenant of good faith and fair dealing claim rises to the level of a tortious breach, entitling Plaintiffs to punitive damages. Plaintiffs are attempting to add new claims and amend their pleadings through motion practice which is not permissible. *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968-69 (2006) (rejecting plaintiff's attempt to add new allegations in support of claims through motion practice); *Lee v. NNAMHS*, No. 03:06-cv-0433-LRH-RAM, 2009 WL 3052443, at *3 (holding "it is not appropriate for Plaintiff to assert new allegations outside of the scope of the complaint" in motion practice). Nevertheless, the parties' Deposit Agreement expressly precludes punitive damages, regardless of whether the claims are grounded in contract or tort.

---

[5] BANA maintains that Plaintiffs' final frozen account was released, despite Plaintiffs' assertions to the contrary. This fact dispute does not require resolution; the conversion claim fails for the other grounds discussed herein.

### III. CONCLUSION

For the foregoing reasons, and the reasons stated in its Motion, BANA respectfully requests that the Court grant its Motion to Dismiss Plaintiffs' Complaint.

Dated: December 14, 2018                          SNELL & WILMER L.L.P.

                                                  By: */s/ Robin E. Perkins*
                                                  Amy F. Sorenson (NV Bar 12495)
                                                  Robin E. Perkins (NV Bar 9891)
                                                  Kiah D. Beverly-Graham (NV Bar 11916)
                                                  3883 Howard Hughes Pkwy, Ste 1100
                                                  Las Vegas, Nevada  89169

                                                  *Attorneys for Bank of America, N.A.*

### CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing **REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT** with the Clerk of the Court for the U.S. District Court, District of Nevada by using the Court's CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

DATED: December 14, 2018

                                                   */s/ Maricris Williams*
                                                  An Employee of Snell & Wilmer L.L.P.

4830-9698-0865